**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**Timothy Charles Holmseth,**

      **Plaintiff,**

**v.**                                                                                              **Case No. 3:18-cv-00361-JAG**

**Kim Lowry Picazio,** *et al.***,**

      **Defendants.**

**DEFENDANT KIM LOWRY PICAZIO'S MEMORANDUM**
**IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Defendant Kim Lowry Picazio ("Ms. Picazio"), by counsel, pursuant to Local Rule 7(F)(1)

of the Rules of the United States District Court for the Eastern District of Virginia, submits this

memorandum in support of her Motion to Dismiss the Complaint filed by Plaintiff Timothy

Charles Holmseth ("Plaintiff" or "Holmseth").

**INTRODUCTION**

Holmseth claims that after he discovered Ms. Picazio's involvement in a child sex-

trafficking ring, Ms. Picazio conspired with two named defendants and at least five John Doe

defendants to harass and defame him over the internet.  Other than conclusory statements,

however, the Complaint alleges no facts establishing the existence of a conspiracy.  This deficiency

is fatal.  Because the Complaint fails to allege the plausible existence of a conspiracy, it fails to

establish personal jurisdiction and fails to state a claim upon which relief may be granted.

Furthermore, the Complaint omits reference to several judicial proceedings that provide

important context for Holmseth's allegations.  In 2011, following years of harassment and

threatening behavior, the Circuit Court for Broward County, Florida entered a permanent

restraining order forbidding Holmseth from harassing Ms. Picazio online.  Holmseth continues to

attack Ms. Picazio, however, and in 2012, he pleaded guilty to criminal charges in Minnesota arising out of his violation of the restraining order. Holmseth presently is subject to arrest in Florida for his failure to appear for a show cause hearing relating to violations of the restraining order. In February 2018, four months before Holmseth commenced this action against Ms. Picazio, he again was criminally charged in Minnesota for violating the restraining order, and the charges are still pending. Holmseth cannot hide these facts from the Court. They are matters of public record of which the Court properly may and should take judicial notice.

The Complaint and this action more broadly serve only to further Holmseth's longstanding objective to harass Ms. Picazio. Ms. Picazio is not subject to personal jurisdiction in Virginia, and the Complaint fails to state a claim against her upon which relief may be granted. It should be dismissed.

## STANDARDS APPLICABLE TO REVIEW

Ms. Picazio seeks dismissal of the Complaint for lack of personal jurisdiction, and for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(2), (6). In considering both bases for dismissal, the Court must construe the allegations in the Complaint in the light most favorable to the plaintiff. *See Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) (when determining a motion to dismiss under Rule 12(b)(2) based on the parties' papers, "the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff"); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (in ruling on a motion to dismiss under Rule 12(b)(6), the reviewing court must accept all allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff). The reviewing court is never bound by conclusory allegations, however, nor is it required to draw unreasonable inferences. *See Shuff v. G R Chevrolet*, No. 4:15-cv-00020,

2016 WL 4094919, *3 (W.D. Va. Aug. 1, 2016) ("Although the standard [for determining whether the plaintiff has made a *prima facie* case for personal jurisdiction] may be lenient, a court need not credit conclusory allegations or draw farfetched inferences.") (quoting *Syngenta Crop Prot., LLC v. Willowood, LLC*, 139 F. Supp. 3d 722, 727 (M.D.N.C. 2015));[1] *Turner v. Virginia Dep't of Med. Assistance Servs.*, 301 F. Supp. 3d 637, 642 (E.D. Va. 2018) (same with respect to a motion to dismiss under Rule 12(b)(6)).

## FACTS ALLEGED

Ms. Picazio is an attorney who at all times relevant has worked and resided in Florida. (Compl. ¶ 2.)   In 2009, Ms. Picazio was hired to provide services in connection with the disappearance of a five year old girl from Florida. (*Id.*)   Holmseth claims to be a journalist, investigative reporter and author who at all times relevant has resided in Minnesota. (*Id.* ¶ 1.) Holmseth alleges that he investigated the girl's disappearance for three months in 2009. (*Id.* ¶ 2.)

According to the Complaint, during Holmseth's investigation, Ms. Picazio's legal assistant allegedly informed Holmseth that Ms. Picazio possessed "child rape pornography" involving the missing girl that she had not turned over to law enforcement. (*Id.* ¶ 12.)  Additionally, a lawyer associate of Ms. Picazio allegedly told Holmseth that Ms. Picazio and her husband "took babies from new and/or poor mothers and sold them on the international black market." (*Id.*)  This lawyer associate explained to Holmseth that she purportedly was told by another associate of Ms. Picazio,

---

[1]     *See also Masselli & Lane, PC v. Miller & Schuh, PA*, 215 F.3d 1320, 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (per curiam) (jurisdictional facts must be construed in the plaintiff's favor, but "the court need not 'credit conclusory allegations or draw farfetched inferences.'") (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)); *Schmalfeldt v. Grady*, No. 417-cv-01310, 2017 WL 6628187, at *3 (D.S.C. Dec. 7, 2017), *report and recommendation adopted*, 2017 WL 6621189 (D.S.C. Dec. 28, 2017) ("District Courts are not required to engage in speculative inferences from conclusory facts proposed to support personal jurisdiction.") (citation omitted).

a pastor, that Ms. Picazio and her husband "moved [the children] through the U.S. Embassy using fake medical records and church dossiers." (*Id.*)  Holmseth also alleges that he received an affidavit, dated October 3, 2011, from a private detective working for Ms. Picazio. (*Id.*)  In the affidavit, the private detective testified, *inter alia*, that Ms. Picazio and her husband told the detective that Holmseth "was a child molester, mentally unstable and dangerous." (*Id.*)

Based on this evidence, allegedly corroborated by "independent third-parties," Holmseth concluded that Ms. Picazio "was involved in a large child sex trafficking operation." (*Id.*)  In June 2009, Holmseth alerted law enforcement agencies to his findings, and a month later, submitted to the FBI his preliminary investigative report concerning the missing girl. (*Id.* ¶¶ 13-14.)[2]  In February 2010, according to Holmseth, an FBI agent in Minnesota interviewed him and found him "credible." (*Id.* ¶ 16.)

Defendant William K. Murtaugh ("Murtaugh") is a resident of Florida. (*Id.* ¶ 3.)  Holmseth alleges that "[o]n almost daily basis [*sic*] between July 2017 and December 2017, Murtaugh and Picazio trolled Holmseth on the Internet," including using the website www.williamkmurtaugh.com to make, publish and republish false and defamatory [statements] about Holmseth. (*Id.*)  Defendant Karen Denise Gaur ("Gaur") is a resident of Virginia. (*Id.* ¶ 4.) In January 2018, Picazio, Murtaugh and Gaur allegedly sponsored a "fake" online petition to have Holmseth involuntarily committed to a mental institution. (*Id.*)

Holmseth alleges that in July 2017, Ms. Picazio, Murtaugh and Gaur entered into a conspiracy to harm Holmseth. (*Id.* ¶ 19.)  The Complaint alleges that there were at least five other members of the conspiracy. (*Id.* ¶ 5.)  Although these co-conspirators are listed as John Does, the Complaint alleges that, "upon information and belief," one or more of them "lives or works" in

---

[2]     A copy of Holmseth's preliminary report is attached to the Complaint as Exhibit A.

Virginia. (*Id.*) Furthermore, Holmseth believes he knows the identity of two of the five John Doe defendants, Levi Page ("Page") and Tina Wilemon-Church ("Church"). (*Id.*) The Complaint suggests that Church published a second online petition attacking Holmseth in coordination with Ms. Picazio, Murtaugh and Gaur. (*Id.*)

## JUDICIAL NOTICE

In considering a motion to dismiss under Rule 12(b)(6), the reviewing court may take judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to the complaint. *See Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 397 (4th Cir. 2006) (citing *Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

On September 19, 2011, the Circuit Court for Broward County, Florida (the "Florida Court") entered an order (the "Restraining Order") permanently restraining Holmseth from harassing Ms. Picazio online. (*See* Exhibit A.)[3] Some of the history relating to the entry of the Restraining Order is recounted in a report and recommendation issued by the magistrate judge, subsequently adopted by the district court judge, dismissing a previous civil lawsuit that Holmseth commenced in 2014. *See Holmseth v. City of E. Grand Forks*, No. CIV. 14-2970, 2015 WL 4488424, *1-3, *5–6 (D. Minn. July 23, 2015).

On October 31, 2011, the Florida Court issued a writ of bodily attachment[4] for Holmseth to answer for his failure to appear at a show cause hearing relating to his violation of the

---

[3]     Under Florida law, the Restraining Order is referred to as a "Repeat Violence Injunction." *See generally*, Fla. Stat. § 741.30.

[4]     Florida law authorizes a court to "[i]ssue a bench warrant, capias, or writ of bodily attachment for an obligor who has failed after proper notice to appear at a hearing ordered by the tribunal and enter the bench warrant, capias, or writ of bodily attachment in any local and state computer systems for criminal warrants." *See* Fla. Stat. § 88.3051(2)(i).

Restraining Order. (*See* Exhibit B.)  The writ by its terms expired after sixty days. (*See id.*).  On August 24, 2017, the Florida Court entered an amended writ of bodily attachment that did not include a sunset provision. (*See* Exhibit C.)  Consequently, Holmseth presently is subject to arrest in Florida in connection with the Restraining Order and his interactions with Ms. Picazio.

In November 2011, Holmseth was arrested in Minnesota and criminally charged with violating the Restraining Order. *See Holmseth*, 2015 WL 4488424 at *6.  Holmseth eventually entered an *Alford* plea. *Id.* at *7.  On February 19, 2018, Holmseth was again criminally charged in Minnesota for violating the Restraining Order. *See State of Minnesota v. Timothy Charles Holmseth*, Case No. 60-CR-18-343 (District Court for Polk County, Minnesota).  Additional charges were filed on March 6, 2018, based on violations of the restraining order that occurred after the first chargers were filed. *See* Case Nos. 60-CR-18-439 and 60-CR-18-441 (filed Mar. 6, 2018).  A trial date has not been set.[5]

Holmseth's long history of harassing Ms. Picazio provides important context.  As explained below, the Complaint fails to allege any facts plausibly connecting Ms. Picazio to any of her alleged co-conspirators, or plausibly suggesting that Ms. Picazio personally undertook any of the acts giving rise to Holmseth's claims.  This action is merely a pretext for Holmseth to continue his harassment of Ms. Picazio.

---

[5]     On August 30, 2018, the Minnesota court entered an order requiring Holmseth to undergo a mental competency exam.  Regardless of the outcome of the evaluation, the mere fact that the Minnesota court ordered the mental exam is relevant to Holmseth's allegation that "[t]here is no basis under any law for Holmseth's involuntary commitment to a mental institution." (Compl. ¶ 4.)

## ARGUMENT AND AUTHORITIES

### I.      The Complaint Fails To Allege Facts Establishing A Conspiracy.

The Court's jurisdiction over Ms. Picazio and the facial validity of Holmseth's claims against her depend on the existence of a conspiracy. (*See* below, Sec. II & III.)  As noted, for purposes of determining both jurisdiction and whether the Complaint states a claim against Ms. Picazio, the Court views the allegations in the Complaint through the same lens. *See Haley Paint Co.*, 775 F. Supp. 2d at 799.[6]

It is well settled that the existence of a conspiracy may not be alleged in general or conclusory terms. *See A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-557 (2007)); *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703–04 (E.D. Va. 2007) (citations omitted).  The complaint must allege facts that are sufficient to establish a meeting of the minds and agreement to conspire, or that at least fairly give rise to an inference of such a meeting of the minds and agreement. *See A Soc'y Without A Name*, 655 F.3d at 347; *Cox v. MAG Mut. Ins. Co.*, No. 3:14-cv-377, 2015 WL 1640513, *6 n.20 (E.D. Va. Apr. 9, 2015) (citing *U.S. ex rel. Godfrey v. Kellogg, Brown & Root, Inc.*, No. 1:05-cv-1418, 2008 WL 9878351, at *7 (E.D. Va. Mar. 13, 2008), *aff'd sub nom. U.S. ex rel. Godfrey v. KBR, Inc.*, 360 Fed. App'x 407 (4th Cir.2010)).  "The factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement." *A Soc'y Without A Name*, 655 F.3d at 347 (citation omitted).

---

[6]      One district court in the Fourth Circuit has observed that "it would be highly incongruous to require separate pleading standards for two subsections of the same rule," especially because "the factual nature of the claims surrounding the grounds for jurisdiction are, more often than not, intertwined with the factual allegations showing that the pleader is entitled to relief." *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp. 2d 790, 799 (D. Md. 2011).

The allegations in the Complaint concerning the existence of a conspiracy fall well short of this standard.  The Complaint indicates that the impetus for the conspiracy is the alleged child sex trafficking ring. (*See* Compl. p. 19 (heading "*Motive For the Defamation*")).   Yet, the allegations are insufficient to plausibly suggest the existence of such an operation,[7] much less Ms. Picazio's involvement in it. (Compl. ¶¶ 10-17.)  Moreover, assuming *arguendo* that the Complaint does sufficiently allege such an operation and Ms. Picazio's  involvement in it, there are no allegations suggesting Murtaugh, Gaur or the John Doe defendants were also involved.  The Complaint offers literally no indicia of any relationship or contact between the defendants or any reason they would enter into an agreement to harm Holmseth, other than conclusory statements that they "acted in concert and combination" with each other. (*See id.* ¶ 4; *see also id.* at p. 1 (defendants "[a]cting in concert and conspiracy . . . ."), ¶ 3 ("At all time [*sic*] relevant to this action, Murtaugh and Picazio were working in concert to defame Holmseth.")).

The Complaint also repeatedly alleges actions taken by the "Defendants" collectively when referring to statements and actions which, on their face, appear to have been undertaken by just some or only one alleged co-conspirator.  Holmseth cites statements posted on a website bearing Murtaugh's name that, on their face, do not purport to be authored by Ms. Picazio. (*See id.* ¶ 3.)  Holmseth also cites an online petition that, on its face, purports to be signed by Murtaugh and Gaur, but not Ms. Picazio. (*Id.* ¶ 4.)  The second online petition Holmseth cites, on its face, purports

---

[7]    Although the conspiracy alleged in *Twombly* was not as farfetched as the sex trafficking ring involving pastors and the "U.S. Embassy" alleged by Holmseth, the pleading standard articulated in *Twombly* nevertheless is intended to separate a "conspiracy theory" in the colloquial sense from a legally actionable conspiracy. *See Glascoe v. Prince George's Cty., Maryland*, No. CV AW-10-710, 2010 WL 11545965, at *1 (D. Md. Nov. 8, 2010), *aff'd*, 417 Fed. App'x 296 (4th Cir. 2011) ("Even though the Court reads the Complaint in the light most favorable to the Plaintiff at the motion-to-dismiss stage, Plaintiff must present something more than fanciful conspiracy theories and subjective attacks on the state legal system if she wanted to set forth cognizable claims.").

to be authored only by Gaur. (*Id.* ¶ 5.) There are no factual, non-conclusory allegations in the Complaint plausibly suggesting that Ms. Picazio was involved in any way with the publication of these statements and petitions.

Holmseth's tactic of attributing all actions to the "Defendants" collectively is insufficient to allege the plausible existence of a conspiracy. "Conspiracy is not established simply by lumping the defendants altogether because the heart of conspiracy is an agreement and a conscious decision by each defendant to join it." *Livia Properties, LLC v. Jones Lang LaSalle Americas, Inc.*, No. 5:14-cv-00053, 2015 WL 4711585, *10 (W.D. Va. Aug. 7, 2015) (quoting *Jaggars v. Sandy Spring Bank*, No. 6L14–cv–00015, 2014 WL 4251003, *3 (W.D. Va. Aug. 28, 2014), *aff'd sub nom. Livia Properties, II, LLC v. Jones Lang LaSalle Americas, Inc.*, 646 Fed. App'x 322 (4th Cir. 2016)).

Holmseth's contention that the defendants conspired to harm him "fails because it is comprised almost entirely of conclusory allegations unsupported by concrete facts." *A Soc'y Without A Name*, 655 F.3d at 347. *See also Holmseth*, 2015 WL 4488424 at *1 ("[Holmseth's] allegations relating to a 'conspiracy' are all conclusory in nature and similarly cannot support legal claims."). No details are provided concerning why or how the defendants agreed to enter into a conspiracy. *Cox*, 2015 WL 1640513 at *6. "The allegations are thus insufficient to support a meeting of the minds by the defendants" to enter into a conspiracy. *A Soc'y Without A Name*, 655 F.3d at 347.

## II.     The Complaint Fails To Make a *Prima Facie* Case For Personal Jurisdiction Over Ms. Picazio.

The Complaint acknowledges, as it must, that Ms. Picazio resides in Florida, not Virginia. (Compl. at ¶ 2.) Thus, as a threshold matter, Holmseth must establish that the Court has personal jurisdiction over Ms. Picazio. *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (3d ed. 2018) ("As a general rule, when the court is confronted by a motion

raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint."). Personal jurisdiction is an issue of law decided by the Court. *Grayson*, 816 F.3d at 267 ("[A] Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter.") (citation omitted).

The exercise of jurisdiction over a non-resident defendant must comport with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Due process demands that a non-resident defendant have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). The plaintiff bears the burden of demonstrating personal jurisdiction. *Grayson*, 816 F.3d at 267 (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

When the court decides personal jurisdiction by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda and the allegations in the complaint, the plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge. *Grayson*, 816 F.3d at 268 (citation omitted). If the existence of jurisdiction turns on disputed questions of fact, the court may resolve the jurisdictional challenge on the basis of a separate evidentiary hearing or as an incident to trial on the merits. *Combs*, 886 F.2d at 677. The district court has "broad discretion to determine the procedure that it will follow" in resolving a jurisdictional challenge. *Grayson*, 816 F.3d at 268. Regardless of the chosen process, ultimately the plaintiff must establish facts supporting jurisdiction by a preponderance of the evidence. *Id.* (citation omitted).

A court can have either general or specific personal jurisdiction over a non-resident defendant. *Handy v. Johnson & Johnson*, No. 3:17-cv-274, 2017 WL 6343792, at *2 (E.D. Va. Dec. 12, 2017) (citation omitted), *aff'd*, 724 Fed. App'x 218 (4th Cir. 2018). *See also Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) ("A court may assume power over an out-of-state defendant either by a proper finding of specific jurisdiction based on conduct connected to the suit or by a proper finding of general jurisdiction.") (internal quotations omitted). General jurisdiction exists if the non-resident defendant's activities in the forum state, although unrelated to the claims at issue, are "continuous and systematic." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–415 (1984)). The Complaint is devoid of any allegation concerning Ms. Picazio's physical presence in Virginia; it merely alleges that "Defendants' contacts with Virginia were (and are) continuous and systematic." (Compl. ¶ 8.) Legal conclusions about the "Defendants" collective contacts is insufficient to make a *prima facie* showing of general jurisdiction over Ms. Picazio. *See E. Direct Mktg. v. The Coolidge Co.*, 26 Va. Cir. 282, 1992 WL 884482, *1 (Arlington Cir. Ct. Feb. 4, 1992) (plaintiff's "conclusory pleading" does not establish general jurisdiction); *see also Handy*, 2017 WL 634379 at *3 ("Handy does not allege facts sufficient to show that Johnson & Johnson has contacts with Virginia continuous and systematic enough to render it essentially at home."). In fact, Ms. Picazio's only contact with Virginia was a one-day stay in Colonial Williamsburg during a family road trip to Washington, D.C. (*See* Exhibit D, Picazio Aff. ¶ 17; *see generally, id.*).

Specific jurisdiction exists when the cause of action arises from the non-resident's contacts with the forum state and requires a "substantial connection" with the forum state. *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000)

11

(citation omitted).    Virginia's long-arm statute, Virginia Code § 8.01-328.1, lists several circumstances in which a defendant's contacts with the forum state are sufficient to establish specific jurisdiction.  The Fourth Circuit has determined that Virginia's long-arm statute comports with the Due Process Clause. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) (citations omitted).  Hence, a plaintiff establishes specific jurisdiction by showing that the defendant's contacts with Virginia satisfy Virginia's long-arm statute. *See CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 293 (4th Cir. 2009).

The Complaint avers that Ms. Picazio is subject to personal jurisdiction under three subsections of the long-arm statute: Subsections (A)(1), (A)(3) and (A)(4). (Compl. ¶ 8.)

Subsection (A)(1) authorizes personal jurisdiction where the cause of action arises from the defendant's transacting business in Virginia. *See* Va. Code § 8.01-328.1(A)(1).  Subsection (A)(1) is inapplicable because the causes of action asserted in the Complaint arise from alleged tortious activity, not business transactions.  Indeed, the Complaint does not identify any business that Ms. Picazio transacted in Virginia giving rise to Holmseth's claims.  At best, the Complaint alleges that the causes of action arise out of business that Ms. Picazio's co-conspirators, namely Gaur, transacted in Virginia, and, Holmseth contends, those contacts are imputed to Ms. Picazio. (*See* Compl. ¶ 8.)  Holmseth's reliance on the so-called "conspiracy theory of jurisdiction" fails because, as noted in Section I above, the Complaint fails to allege the existence of a conspiracy. *See Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013) (to establish conspiracy theory of personal jurisdiction, the plaintiff must "rely on more than bare allegations") (internal quotations omitted).

Subsection (A)(3) of the long-arm statute applies when the defendant's acts or omissions within Virginia tortiously injure the plaintiff. *See* Va. Code § 8.01-328.1(A)(3).  Subsection (A)(3)

is inapplicable because the Complaint does not allege any act or omission undertaken by Ms. Picazio in Virginia. *People Exp. Airlines, Inc. v. 200 Kelsey Assocs., LLC*, 922 F. Supp. 2d 536, 545 (E.D. Va. 2013) (regardless of where injury suffered, Subsection (A)(3) inapplicable because the plaintiff "failed to allege that [the defendant] committed *any* act in Virginia.") (emphasis in original); *accord Cent. Virginia Aviation, Inc. v. N. Am. Flight Servs., Inc.*, 23 F. Supp. 3d 625, 629 (E.D. Va. 2014) (citing *Jones v. Boto Co.*, 498 F. Supp. 2d 822, 826 (E.D. Va. 2007)).  To the extent that Holmseth's application of Subsection (A)(3) relies on the conspiracy theory of jurisdiction, it fails because, again, the Complaint does not sufficiently allege the existence of a conspiracy.

Subsection (A)(4) applies when the defendant's acts or omissions outside Virginia tortiously injure the plaintiff inside Virginia, but only if the defendant regularly conducts or solicits business in Virginia, engages in any other persistent course of conduct in Virginia or derives substantial revenues from goods or services in Virginia. *See* Va. Code § 8.01-328.1(A)(4). Holmseth cannot rely on Subsection (A)(4) for at least four reasons.  First, the Complaint does not identify any act or omission specifically by Ms. Picazio giving rise to the causes of action asserted. *C.f. Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619, 626 (W.D. Va. 2015) ("In the Fourth Circuit and elsewhere, courts have interpreted *Twombly* and *Iqbal* to mean that generic or general allegations about the conduct of 'defendants,' without more, fail to state a claim.") (compiling cases).  Second, alleged acts and omissions of Ms. Picazio's purported co-conspirators cannot be imputed to Ms. Picazio because, again, the Complaint fails to allege the existence of a conspiracy. *See Unspam Techs., Inc.*, 716 F.3d at 329.  Third, the Complaint fails to allege that Holmseth, who at all times relevant resided in Minnesota (Compl., ¶ 1), was injured in Virginia.  Fourth, for the same reason the Complaint fails to show general jurisdiction, it fails to establish the important

qualifiers under (A)(4) concerning the defendant's general contacts in Virginia.  Each of the foregoing deficiencies independently precludes Holmseth from establishing specific jurisdiction under (A)(4).

The Complaint also references Subsection (B) of the long-arm statute. (Compl. ¶ 8.). Subsection B clarifies that the use of a computer or computer network that is located in Virginia shall constitute an act in Virginia. *See* Va. Code § 8.01-328.1(B).  Subsection (B) is of no moment because the Complaint does not identify any computer or computer network located in Virginia used by Ms. Picazio in connection with any act giving rise to Holmseth's claims.  To the extent that any of the alleged co-conspirators used a computer or computer network in Virginia, again, their actions cannot be imputed to Ms. Picazio.

Lastly, assuming *arguendo* that the Complaint did allege non-conclusory, non-speculative facts plausibly showing that Ms. Picazio was involved in any of the online statements at issue, the Complaint still fails to make a *prima facie* showing of personal jurisdiction.  To establish jurisdiction over a non-resident defendant based on internet activity, a plaintiff must satisfy the *Zippo* test. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002) (adopting and adapting the test developed in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa.1997)); *accord FireClean, LLC v. Tuohy*, No. 1:16-cv-0294, 2016 WL 3952093, at *4 (E.D. Va. July 21, 2016)).  Under the *Zippo* test, as modified by the Fourth Circuit, "a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc.*, 293 F.3d at 714.

14

The Complaint fails the *Zippo* test because it fails to allege any electronic activity directed into Virginia that gives rise to any of Holmseth's claims.  Again, at all times relevant, Holmseth resided in Minnesota, not Virginia.  The only electronic activity the Complaint identifies as being directed to someone in Virginia is the purported online video targeting Susan Earman, a Virginia resident who allegedly supports Holmseth. (*See* Compl. ¶ 2.)  The Complaint does not explicitly identify the date of the video, but it does cite a web address indicating that the video was published on or before July 7, 2015. (*See id.*)[8]  The conspiracy described in the Complaint is not alleged to have begun until July 2017, however, and thus the video does not give rise to Holmseth's claims. (*See id.* at ¶ 19.)

Holmseth has not met and cannot meet his burden of establishing that Ms. Picazio, a Florida resident, is subject to personal jurisdiction in Virginia.  Therefore, the Complaint should be dismissed.

## III.   The Complaint Fails To State A Claim Upon Which Relief May Be Granted.

The Complaint asserts four causes of action: common law conspiracy (Count I); defamation *per se* (Count II); intentional infliction of emotional distress (Count III); and personal trespass and harassment (Count IV).  The common law conspiracy claim, obviously, is dependent on allegations sufficient to establish the existence of a conspiracy and, therefore, fails. *Bay Tobacco, LLC v. Bell Quality Tobacco Prod.*, LLC, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003). The remaining counts are not expressly predicated on the existence of a conspiracy, but to the

---

[8]      The web address cited in reference to the video is: https://haleighcummingsdotme.wordpress.com/**2015/07/07**/satanic-cult-releases-videoabout-haleigh-cummings/. (Compl. ¶ 2) (emphasis added).

extent they are premised on the alleged conspiracy, they necessarily fail to state a claim. (*See* above, Section I.)

Alternatively, to the extent that the remaining counts do not depend on the existence of a conspiracy, they still fail to state a claim upon which relief may be granted.  The only act specifically alleged to have been taken by Ms. Picazio that could conceivably support a cause of action by Holmseth concerns statements attributed to Ms. Picazio and her husband in the private detective's affidavit. (*See* Compl. ¶ 12.)[9]  The affidavit is dated October 3, 2011, and thus reports on activities that occurred more than five years prior to the commencement of this action. (*See id.*) Consequently, none of the activities described in the purported affidavit could support the causes of action asserted in the Complaint.

Simply stated, the Complaint does not allege any act by Ms. Picazio giving rise to Holmseth's claims except her involvement in the conspiracy, the plausible existence of which has not been sufficiently alleged.  Therefore, all the counts asserted in the Complaint fail to state a claim upon which relief may be granted and should be dismissed.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Ms. Picazio respectfully requests that her motion be granted; that the Complaint be dismissed against her in its entirety with prejudice; and that she be awarded any additional relief that the Court deems fair and just.

---

[9]     Although the Complaint does not quote the affidavit in full or attach a copy as an exhibit, the affiant appears to allege that Ms. Picazio and her husband told him that Holmseth "was a child molester, mentally unstable and dangerous." (Compl. ¶ 12.)

Date:   October 5, 2018.                              Respectfully submitted,

                                                      KIM LOWRY PICAZIO

                                                      By Counsel

                                                      /s/ David B. Lacy
                                                      David B. Lacy (VSB No. 71177)
                                                      Warren David Harless (VSB No. 20816)
                                                      CHRISTIAN & BARTON, L.L.P.
                                                      909 East Main Street, Suite 1200
                                                      Richmond, Virginia 23219-3095
                                                      Tel.:    (804) 697-4100
                                                      Fax:     (804) 697-4112
                                                      wharless@cblaw.com
                                                      dlacy@cblaw.com

                                                      *Counsel for Kim Lowry Picazio*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/ David B. Lacy
David B. Lacy (VSB No. 71177)
CHRISTIAN & BARTON, L.L.P.
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Tel.:    (804) 697-4100
Fax:    (804) 697-4112
dlacy@cblaw.com

*Counsel for Kim Lowry Picazio*

#2386662